UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| VANESSA KELLEY,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF HENDERSON, *et al.*,<br><br>    Defendants. | Case No. 2:15-cv-02204-APG-VCF<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>(ECF Nos. 11, 17) |

Plaintiff Vanessa Kelley's former spouse, Audrey Young, accused Kelley of stabbing her multiple times in the neck, back, and chest. When the police responded to Young's call, they took Kelley into custody and she was detained for six months. Kelley alleges that the officers failed to investigate her alibi and that the jail refused to give her medication for a serious medical need.

As a result, she filed this lawsuit under 42 U.S.C. § 1983 against the City of Henderson, Naphcare (the jail's healthcare provider), the officers who arrested her, a detective, the Henderson Chief of Police, and others. The Henderson defendants and Naphcare move to dismiss. ECF Nos. 11, 17. Because Kelley's allegations are conclusory, I grant both motions. I also grant Ms. Kelley leave to amend.

**I.     BACKGROUND**

Kelley alleges that she was falsely arrested for the attempted murder of her spouse, Young. ECF No. 1-1 at ¶ 17. According to the complaint, Young suffers from bipolar disorder, schizophrenia, and borderline personality disorder. *Id.* at ¶ 26. Young reported to the Henderson Police that Kelley stabbed her in the head, chest, and neck. *Id.* at ¶ 18. Defendant Officers Hosaka and Mitchell responded to Young's call and they allegedly failed to investigate and arrested Kelley without probable cause. *Id.* at ¶¶ 21, 23.

Following her arrest, Kelley was incarcerated for six months. *Id.* at ¶ 25. During this time, defendant Naphcare "refused to provide Ms. Kelley with medication and treatment for her serious medical needs." *Id.* Kelley maintained her innocence, asserting that at the time the crime allegedly occurred she was in Family Court filing for a temporary protective order. *Id.* at ¶ 19. The charges against Kelley were eventually dismissed when the presiding judge was presented with video surveillance footage showing that she was, in fact, in Family Court when the crime allegedly occurred. *Id.* at ¶ 22.

Kelley subsequently filed this lawsuit. Her complaint contains federal and state law claims for false imprisonment, malicious prosecution, deliberate indifference, *Monell* liability, intentional infliction of emotional distress, and negligence. Ms. Kelley also seeks an award of punitive damages.

## II.   ANALYSIS

A properly pleaded complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must "contain[] enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted).

District courts must apply a two-step approach when considering motions to dismiss. *Id.* at 679. First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor. *Id.*; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013). Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations. *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 663. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and citation omitted). When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the [district] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**A.    False Imprisonment (Counts One & Seven)**

The Ninth Circuit recognizes section 1983 claims for mistaken incarceration in two circumstances. The plaintiff must allege that "(1) the circumstances indicated to the defendants that further investigation was warranted, or (2) the defendants denied the plaintiff access to the courts for an extended period of time." *See Garcia v. Cty. of Riverside*, 817 F.3d 635, 640 (9th Cir. 2016).

Under Nevada law, false imprisonment is the "unlawful violation of the personal liberty of another, and consists in confinement or detention without sufficient legal authority." Nev. Rev. Stat. § 200.460. To establish a claim of false imprisonment, it is necessary to prove that the person was restrained of her liberty under probable imminence of force without any legal cause or justification. *Goodman v. Las Vegas Metropolitan Police Dep't.*, 963 F. Supp. 2d 1036, 1061 (D. Nev. 2013). An individual's "submission to the mere verbal direction of another, unaccompanied by force or threats of any character, does not constitute false imprisonment." *Lerner Shops of Nev., Inc. v. Marin*, 423 P.2d 398, 400 (Nev. 1967).

The Henderson defendants argue that Kelley's false-imprisonment claims should be dismissed because she pleaded that the police officers had probable cause. In response, Kelley contends that the existence of probable-cause is a question for the jury and the officer's probable-

cause assessment failed to account for Kelley's assertion that she was in Family Court at the time of the arrest. Kelley also argues that she stated a plausible claim for false imprisonment under state law because she was arrested without probable cause and confined for six months.

Kelley's complaint lacks sufficient factual allegations to support her false-imprisonment claims. She alleges that the officers "lacked probable cause" to arrest her but she provides insufficient facts to support this legal conclusion. *See* ECF No. 1-1 at ¶¶ 19-25. Probable cause is "[b]ased upon the totality of the circumstances known to the officers at the time" of the arrest. *See United States v. Elliott*, 322 F.3d 710, 715 (9th Cir. 2003). According to the complaint, the only facts that the officers knew at the time of the arrest was that Young said that Kelley stabbed her in the head, chest, and neck. *See* ECF No. 1-1 at ¶ 17. Kelley alleges no facts showing that the officers knew at the time she was arrested that she had been at Family Court at the time of the alleged stabbing. *Id.* at ¶¶ 19-25.

Kelley alleges in conclusory fashion that the officers had "knowledge of evidence which exculpated Ms. Kelley of any crime." *Id.* at ¶ 24. But the complaint provides no facts to support this conclusion, nor does it state when the officers obtained this knowledge. Kelley also alleges that the officers failed to investigate her alibi and Young's alleged mental illness. *Id.* at ¶¶ 21, 26. But the complaint states that the officers' failure to investigate occurred after they completed their probable-cause determination and while Kelley was awaiting trial in lockup. *See id.* at ¶ 25.

As a result, Kelley failed to plead that the officers lacked probable cause at the time of the arrest and that the facts known to the officers indicated that further investigation was warranted. *See Garcia*, 817 F.3d at 640. I therefore dismiss Kelley's false-imprisonment claims without prejudice.

  **B.**  **Malicious Prosecution (Counts Two & Six)**

To state a claim for malicious prosecution under Nevada law, a plaintiff must show that (1) the defendants lacked probable cause to initiate the prosecution, (2) malice, (3) the prior criminal proceedings were terminated in her favor, and (4) the plaintiff suffered damages. *LaMantia v. Redisi*, 38 P.3d 877, 888 (Nev. 2002) (citation omitted). A malicious-prosecution

claim under 42 U.S.C. § 1983 requires proof of a state-law malicious-prosecution claim plus the additional element that the defendants prosecuted the plaintiff with the intent to deprive her of a constitutional right. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) (citations omitted).

A plaintiff may bring a malicious-prosecution claim not only against the prosecutor but also against police officers and investigators who were instrumental in initiating the prosecution. *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011); *LaMantia*, 38 P.3d at 879–80. But police officers "are not liable for damages suffered by the arrested person after a district attorney files charges unless the presumption of independent judgment by the district attorney is rebutted." *Blankenhorn v. Cty. of Orange*, 485 F.3d 463, 482 (9th Cir. 2007) (internal quotation marks omitted). "This presumption may be rebutted by showing, for example, that the prosecutor was pressured or caused by the investigating officer[ ] to act contrary to his independent judgment or that the investigating officer[ ] presented the prosecution with information known by [him] to be false." *Id.*

The Henderson defendants argue that Kelley's malicious-prosecution claims should be dismissed because she pleaded that the police officers had probable cause. Kelley responds that she has properly alleged that the officers knew of exculpatory evidence and, nonetheless, filed charges against her. But that is not what the complaint alleges. *See* ECF No. 1-1 at ¶¶ 21–24. Kelley alleges that she was arrested and prosecuted and then, sometime later, the officers obtained knowledge of exculpatory evidence. As a result, Kelley's complaint lacks sufficient factual allegations to show that the defendants acts with malice or intended to deprive her of a constitutional right. I therefore dismiss her malicious-prosecution claims without prejudice.

### C. Deliberate Indifference (Count Three)

The Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, governs a pretrial detainee's claim for deliberate indifference. *Castro v. Cty. of Los Angeles*, 797 F.3d 654, 664 (9th Cir.) reh'g en banc granted, 809 F.3d 536 (9th Cir. 2015). But the standard is essentially the same. *Id.* The failure to provide

medical treatment to a pretrial detainee violates the Constitution when (1) he has a "serious medical need" and (2) detention officials are "deliberately indifferent" to it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A medical need is serious when, viewed objectively, the failure to treat it "could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citations omitted). A detention official is deliberately indifferent when he subjectively knows of and disregards "an excessive risk to" the detainee's health or safety, the official is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . [draws that] inference." *Farmer*, 511 U.S. at 837; *Conn v. City of Reno*, 591 F.3d 1081, 1096 (9th Cir. 2010).

The defendants argue Kelley's deliberate-indifference claim fails because the complaint contains no facts showing that she had a serious medical need. Kelley responds that the complaint is factually sufficient because it states that she was diagnosed with "psychological conditions prior to her wrongful imprisonment" and that the defendants had "actual knowledge" of her "worsening condition" and "excruciating pain." *Id.* at ¶¶ 55, 57. These allegations are mere legal conclusions couched as factual assertions. The complaint does not specific what condition Kelley suffered from or who at Naphcare had actual knowledge of her diagnosis and pain. I therefore dismiss Kelley's deliberate-indifference claim without prejudice.

### D. *Monell* Liability (Count Four)

A municipal entity may be held liable for its employees' conduct under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690 (1978) if the conduct was the result of (1) an expressly adopted official policy, (2) a longstanding practice or custom that constitutes the standard operating procedure of the municipality, (3) a decision of an official who was a final policymaking authority whose edicts may fairly be said to represent official policy, or (4) a municipality's failure to train its employees when the failure to train amounts to deliberate indifference to the rights of others. *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).

Municipalities may not be held liable under a theory of *respondeat superior*. *Monell*, 436 U.S. at 690.

The defendants argue that Kelley's *Monell* claim should be dismissed because Kelley failed to plausibly allege facts showing a constitutional violation or the existence of a policy or custom that caused the constitutional violation. Kelley contends that she pleaded approximately 19 policies that caused her constitutional deprivation.

As discussed above, Kelley's assertion that she suffered a "serious" medical condition is a legal conclusion that is not entitled to the assumption of the truth. *See Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248. Additionally, Kelley's *Monell* claim is not plausibly pleaded because her allegations merely recite the elements of her federal and state-law claims. For instance, Kelley alleges that the City of Henderson has policies to "allow Officers to not obtain exculpatory evidence," "to tolerate Officers not obtaining exculpatory evidence," "to allow Officers to not disclose exculpatory evidence," and "to tolerate Officers not disclosing exculpatory evidence." ECF No. 1-1 at ¶ 65(a-d). But Kelley provides not factual support to show that Henderson has such policies or even *de facto* policies that have caused other individuals to suffer her same fate. Additionally, Kelley alleges policies that are unrelated to her claims. For instance, she asserts that Henderson has a policy of allowing police officers to "coach" witnesses. *Id.* at ¶ 65(f). Because Kelley has alleged only conclusory allegations, I dismiss her *Monell* claim without prejudice.

### E.  Intentional Infliction of Emotional Distress (Count Five)

To state a claim for intentional infliction of emotional distress a plaintiff must establish: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation." *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (citation omitted).

Kelley predicates her emotional-distress claim on Naphcare's alleged refusal to give her medication for her "serious" medical condition, the officers' arresting her without probable cause

and refusing to provide exculpatory evidence, and the City of Henderson's wrongfully incarcerating her. *See* ECF No. 1-1 at ¶ 76. The move to dismiss on the grounds that Kelley failed to plead sufficient factual matter. As discussed above, Kelley's assertion that she suffered a "serious" medical condition, was arrested without probable cause, and was falsely imprisoned are legal conclusions that are not entitled to the assumption of the truth. *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248. I therefore dismiss this claim without prejudice.

### F. Negligence (Count Eight)

To state a claim for negligence under Nevada law, a plaintiff must establish four elements: (1) the defendant owed the plaintiff a duty of due care; (2) the defendant breached its duty; (3) the breach proximately caused plaintiff's injury; and (4) the plaintiff suffered damages. *Perez v. Las Vegas Med. Ctr.*, 805 P.2d 589, 591 (Nev. 1991). Kelley alleges negligence against Naphcare for denying her medication for her serious medical need and negligence against the Henderson defendants for arresting her without probable cause.

#### 1. *Naphcare*

Naphcare argues that Kelley's negligence claim fails because (1) it is time barred under Nevada's medical-malpractice statute and (2) she failed to plausibly allege that she suffered from a serious medical need. I have previously held that Nevada's one-year statute of limitation for medical-malpractice does not apply to claims for deliberate indifference. *See Repass v. Clark Cty. Det. Ctr.*, No. 2:13-CV-00237-APG, 2014 WL 335040, at *6 (D. Nev. Jan. 29, 2014) (citation omitted). Because Kelley's negligence claim arises from the same set of facts as her deliberate-indifference claim, the applicable limitation period is found in the general statute of limitations for personal injury actions under Nev. Rev. Stat. § 11.190(4)(e). Kelley's negligence claim against Naphcare is therefore timely.

However, as stated above, her allegation that she suffered from a serious medical need is conclusory. I therefore dismiss her negligence claim against Naphcare without prejudice.

#### 2. *Henderson Defendants*

Kelley alleges that the individual police officers were negligent because they failed to

fully investigate the alleged crime. The defendants argue that this claim fails because the police did not owe her a duty to investigate.

The Supreme Court of Nevada has not addressed this issue. "Where Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance." *Mort v. United States*, 86 F.3d 890, 893 (9th Cir. 1996). In California, it is well settled that police do not have a duty to investigate. *See, e.g., So v. Bay Area Rapid Transit*, No. C-12-05671 DMR, 2013 WL 5663207, at *8 n.8 (N.D. Cal. Oct. 17, 2013) (collecting cases); *see also Roe v. City of Spokane*, No. CV-06-0357-FVS, 2008 WL 2705142, at *12 (E.D. Wash. July 9, 2008) ("The state has no general duty to investigate under the common law."). I therefore dismiss Kelley's negligence claim against the Henderson defendants with prejudice.

### G.     Chief Moers

Chief Moers moves to dismiss the claims against him because Kelley did not allege that he participated in the events alleged in the complaint. Kelley responds that she stated a viable claim against Chief Moers because he was the policymaker in Henderson's police department. *See* ECF No. 1-1 at ¶ 68. However, "[l]iability under § 1983 must be based on the personal involvement of the defendant." *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Kelley alleges no personal involvement by Chief Moers, other than her conclusory assertion that he was "the moving force and/or proximate cause of Plaintiff's clearly-established rights." *Id.* I therefore dismiss Chief Moers without prejudice.

### H.     Punitive Damages

Because I dismiss Kelley's substantive claims, I also dismiss her request for punitive damages.

### I.     Qualified Immunity

Finally, the Henderson defendants argue that the individual officers are entitled to qualified immunity. Because Kelley's complaint lacks adequate facts to determine what the officers actually knew and believed, I cannot determine whether their actions were objectively reasonable. *See Green v. City and Cty. of San Francisco*, 751 F.3d 1039, 1052 (9th Cir. 2014)

(holding that disputed facts about what officer knew and believed during detention of arrestee and how much force was actually used precluded a determination as to qualified immunity). I therefore defer consideration of the defendants' qualified-immunity arguments and grant them leave to raise them again if Kelley files an amended complaint.

### III.  CONCLUSION

IT IS THEREFORE ORDERED that the Henderson defendants' and Naphcare's motions to dismiss **[ECF Nos. 11, 17] are GRANTED**.

IT IS FURTHER ORDERED that all claims are dismissed with leave to amend with the exception of Ms. Kelley's negligence claim against the City of Henderson, which is dismissed with prejudice.

IT IS FURTHER ORDERED that Ms. Kelley may file an amended complaint within 21 days of the entry of this order if she can allege sufficient facts to address the defects raised in this order. The failure to file an amended complaint will result in this action being closed.

DATED this 23rd day of August, 2016.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE