# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

VANESSA KELLEY,

    Plaintiff,

v.

CITY OF HENDERSON, *et al.*,

    Defendants.

Case No. 2:15-CV-02204-APG-VCF

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

(ECF No. 52)

    Plaintiff Vanessa Kelley spent several months in jail for a crime she did not commit. Her spouse (Audrey Young) falsely reported that Kelley stabbed her. Kelley alleges City of Henderson detectives failed to fully investigate her spouse's accusation. Kelley's amended complaint includes causes of action for malicious prosecution, unlawful imprisonment, and *Monell* liability under 42 U.S.C. § 1983. She also asserts state law claims for malicious prosecution, false imprisonment, and intentional infliction of emotional distress ("IIED"). Kelley names the arresting detectives (Mark Hosaka and Chad Mitchell) and their employer (the City of Henderson) as defendants.

    I dismiss Kelley's *Monell* and IIED claims. I also dismiss the portions of Kelley's other claims that rely on allegations that her post-arrest detention was unreasonable because the detectives knew of exculpatory evidence that would have negated probable cause. But, because Kelley has adequately alleged the detectives lacked probable cause to arrest her, I deny the defendants' motion to dismiss her malicious prosecution and false imprisonment claims entirely.

## I.    BACKGROUND

    In October 2013, detectives Hosaka and Mitchell responded to Young's 911 call. ECF No. 51 at ¶¶ 4, 12, 14. Young told the detectives she had been stabbed by her wife, Vanessa Kelley. *Id*. at ¶ 12. Young could not identify what implement Kelley used to stab her, but she "assumed" it was a deadly weapon. *Id*. at ¶ 17.

After interviewing Young, detective Hosaka said, "ideally we'll find [Kelley] today, and she'll be locked up . . . as it goes now, there's enough to arrest her." *Id*. at ¶ 18. Kelley alleges the detectives did not collect various pieces of evidence that could have exculpated her. *Id*. at ¶ 20. For example, the detectives did not impound the rags Young claimed she used to clean her bleeding or the chair she claimed was damaged. *Id*. at ¶¶ 24, 26. The detectives did not speak to witnesses or neighbors or take photos. *Id*. at ¶¶ 21, 22. They did not verify whether the couple had protective orders in place at the time of the incident, which the couple did. *Id*. at ¶ 27. Surveillance video shows Kelley entering a family court around the time of the alleged stabbing. *Id*. at ¶ 13. Additionally, Young receives treatment for schizophrenia and other mental disorders. *Id*. at ¶ 40.

Kelley alleges she called the Henderson Police to request an officer to stand by while she collected her belongings from the residence where the alleged stabbing occurred. *Id*. at ¶ 19. Kelley indicated she told the detectives she was willing to speak to them in the presence of her attorney. *Id*. at ¶ 29. The detectives then arrested her. *Id*. at ¶ 30. Kelley spent several months in jail until the prosecuting attorney dropped the charges against her. *Id*. at ¶¶ 37, 39.

Kelley alleges her arrest was not an isolated mistake by the Henderson police but rather was a product of the City's policies that tolerate officer misconduct. *Id*. at ¶¶ 68, 70. Kelley alleges the City of Henderson has unwritten policies of not preserving and disclosing evidence once detectives have found probable cause to arrest a suspect. *Id*. at ¶ 5. As evidence of these policies, she alleges the City promoted an officer who used excessive force against a man suffering a diabetic seizure and she lists six other individuals whose civil rights have allegedly been violated by the City. *Id*. at ¶¶ 68(b), 70.

## II. **LEGAL STANDARD**

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). But it does require more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of

action." *Id*. (quotation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). They must "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation omitted).

District courts apply a two-step approach when considering motions to dismiss. *Id*. at 679. First, courts accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor. *Id*.; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013). Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations. *Iqbal*, 556 U.S. 679.

Second, courts consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation omitted). Complaints must be dismissed when they have not crossed the line from conceivable to plausible. *Twombly*, 550 U.S. at 570. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

### A. Section 1983 Malicious Prosecution and Unlawful Imprisonment (Counts One and Two)

Kelley alleges the detectives maliciously prosecuted her in violation of her Fourth, Fifth, and Fourteenth Amendment rights. She alleges they lacked probable cause to arrest her because no reasonable officer would rely on the testimony of one witness who claims she was the victim of the crime. And Kelley alleges she remained incarcerated for months despite the existence of exculpatory evidence that would have negated probable cause for her continued detention.

The defendants move to dismiss, arguing Kelley has not alleged specific facts which, if accepted as true, would establish she was arrested without probable cause. They also argue that

Kelley had no right to a post-arrest investigation. Alternatively, the defendants assert the detectives are entitled to qualified immunity.

Section 1983 creates a cause of action against a person who, acting under the color of state law, deprives a person of their constitutional rights. The section "does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). To state a claim under § 1983, the plaintiff must allege "(1) the action occurred under color of state law and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." *Id.* (quotation omitted).

For a § 1983 malicious prosecution claim, a plaintiff must allege "that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).[1] Where, as here, claims are based on (1) a challenge to an arrest for lack of probable cause and (2) continued pre-trial incarceration without probable cause, the Fourth Amendment governs. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 919-20 (2017).[2]

"Probable cause exists when, at the time of arrest, the agents know reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or

---

[1] The defendants do not move to dismiss Kelley's malicious prosecution claim on the basis that she has not alleged they acted with the purpose of denying her equal protection or another specific constitutional right.

[2] Kelley has alleged the detectives violated her Fifth Amendment right against self-incrimination by arresting her "based on her refusal to speak to them." ECF No. 51 at ¶ 30. Kelley has not identified any cases that would have put the defendants on notice that arresting a suspect who states that she will talk to the police with her attorney present, without first taking her up on that offer, violates that suspect's constitutional rights. The detectives therefore are entitled to qualified immunity because Kelley has not met her burden of showing her rights were clearly established in the specific context of this case. *See Krainski v. Nevada ex rel. Bd. of Regent*, 616 F.3d 963, 969 (9th Cir. 2010). This allegation also cannot support her *Monell* claim because she does not allege the City had a policy, custom, or practice of arresting people who invoke their right to silence or to an attorney. Nor has she alleged facts that would plausibly show such a policy. Consequently, I dismiss any § 1983 claim based on the allegations that the detectives arrested her in response to her invoking her right to remain silent or her right to request the assistance of an attorney during questioning.

was committing an offense." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 924–25 (9th Cir. 2001) (quotation omitted). In establishing probable cause at the time of arrest, "officers may not solely rely on the claim of a citizen witness that [s]he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses." *Id.* at 925. Police can, however, rely on a single victim witness when she "provides facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator." *Peng v. Mei Chin Penghu*, 335 F.3d 970, 978 (9th Cir. 2003) (quotation omitted). Where the "material, historical facts are not in dispute," a court can decide as a matter of law whether probable cause existed at the time of arrest. *Id.* at 979–80.

Once probable cause to arrest has been established, "a law enforcement officer is not required by the Constitution to investigate independently every claim of innocence." *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003) (quotation omitted).[3] Moreover, "even if the officers were mistaken that probable cause to arrest existed, they are nonetheless immune from liability if their mistake was reasonable." *Krainski v. Nevada ex rel. Bd. of Regent*, 616 F.3d 963, 969 (9th Cir. 2010) (quotation and alteration omitted). "[O]fficers cannot be expected to predict the future course of constitutional law." *Inouye v. Kemna*, 504 F.3d 705, 715 (9th Cir. 2007) (quotation omitted). Thus, they may be entitled to qualified immunity if their conduct does not violate a constitutional right that was "clearly established in light of the specific context of the case." *Krainski,* 616 F.3d at 968 (quotation omitted).

---

[3] Police officers may be liable for violating a person's constitutional rights when a detention of "unusual length" is "caused by the investigating officers' failure to disclose highly significant exculpatory evidence to prosecutors" and is "due to conduct that is culpable in that the officers understood the risks to the plaintiff's rights from withholding the information or were completely indifferent to those risks." *Tatum v. Moody*, 768 F.3d 806, 819–20 (9th Cir. 2014). Any such claim would fail here for the same reasons discussed below. Kelley has not alleged when the detectives learned of the exculpatory information. Thus, there is no plausible allegation that her continued detention was due to the detectives withholding that information.

Taking the allegations in the amended complaint as true, the detectives arrested Kelley based only on Young's statements.[4] The amended complaint alleges that the detectives did not conduct any other investigation. The amended complaint does not allege that corroborating circumstances existed (such as visible injuries or a fearful demeanor) or that Young's statement was sufficiently detailed to support probable cause. Kelley has therefore adequately alleged the detectives did not have probable cause to arrest her.[5] The detectives are not entitled to qualified immunity because, under *Arpin,* it was clearly established at the time of the arrest in this case that officers may not rely solely on the claim of a citizen witness that she was a victim of a crime, but must independently investigate the basis of the witness's knowledge or interview other witnesses. *Hopkins v. Bonvicino*, 573 F.3d 752, 771–72 (9th Cir. 2009).

However, Kelley has not pleaded facts and circumstances within the detectives' knowledge that would support her claim that her continued detention was unreasonable based on the existence of exculpatory evidence. She does not allege facts showing how the detectives would have known about the video of her at family court or that Young was in outpatient treatment for schizophrenia. Nor has she alleged when the detectives learned that information such that any post-arrest detention would have been unreasonable once they learned it.

In sum, I deny the defendants' motion to dismiss Kelley's § 1983 malicious prosecution and unlawful imprisonment claims because Kelley has plausibly alleged the police lacked probable cause to arrest her. But because Kelley has not alleged when exculpatory evidence was brought to the detectives' attention, those parts of her malicious prosecution and false imprisonment claims are dismissed.

/ / / /

---

[4] The amended complaint does not allege for what crime Kelley was arrested. Regardless of the crime for which Kelley could have been arrested, the detectives cannot base their arrest decision solely on the victim's statements absent circumstances not alleged in the amended complaint.

[5] It may be that the detectives conducted a more thorough investigation than is alleged in the amended complaint or had other indicia of reliability related to Young's statement. But at the dismissal stage, I cannot look outside the amended complaint's allegations.

**B.     Section 1983 Monell Claim (Count Three)**

Kelley alleges the City has two unwritten policies that result in repeated constitutional violations under § 1983: (1) allowing officers to fail to obtain exculpatory evidence and (2) failing to discipline poorly performing officers. The City moves to dismiss, arguing Kelley does not provide sufficient factual allegations to establish the City was the moving force behind any alleged constitutional violation.

Municipalities may not be held liable on a *respondeat superior* theory under § 1983. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Instead, a municipal entity may be liable when its "policy or custom . . . inflicts the injury." *Id.* at 694. A complaint must allege "that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). A single act by a non-policymaking official does not show the existence of a policy, custom, or practice. *Rivera v. Cty. of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014).

Kelley provides two examples of the City's unwritten policies besides her own case. First, she describes an officer who kicked a man who was experiencing a diabetic seizure. Kelley claims this officer was promoted. This promotion allegedly shows the City has a policy of failing to adequately discipline poorly performing officers. Her second example is a list of six individuals whose rights have allegedly been violated.

Kelley has not provided sufficient factual allegations that the City has unconstitutional policies or that these alleged policies were the driving force behind her arrest. Her allegation that the detectives failed to obtain exculpatory evidence in this case is not enough to show a policy as a matter of law because allegations about a single instance do not allege a policy, custom, or practice.

Her allegation of a single instance of the City promoting an officer who once used excessive force does not establish a policy or practice of failing to discipline poorly performing officers. Moreover, she has not alleged any such policy was the moving force being the violations in this case because there are no allegations that either Hosaka or Mitchell were poor

performers. Further, her list of six individuals whose rights were allegedly violated does not contain any facts about what happened to those individuals such that any reasonable conclusions about the City's polices could be drawn. I therefore dismiss Kelley's *Monell* claim.

### C. State Malicious Prosecution (Count Five)

Kelley alleges the defendants inadequately investigated Young's statements and prosecuted her without probable cause. The defendants move to dismiss, arguing that the detectives had probable cause to arrest Kelley and that Nevada does not recognize a right to a post-arrest investigation.

The elements of malicious prosecution in Nevada are: "(1) want of probable cause to initiate the prior criminal proceeding; (2) malice; (3) termination of the prior criminal proceedings; and (4) damage." *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002) (quotation omitted). The Supreme Court of Nevada has not addressed whether there is an independent state right to a post-arrest investigation. "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007) (quotation omitted). As discussed above, there is no federal right to a post-arrest investigation. *Broam*, 320 F.3d at 1032. I predict the Supreme Court of Nevada would follow that reasoning and also not recognize a right to a post-arrest investigation.[6]

---

[6] Kelley contends detectives had a statutory duty to investigate Young's accusations to determine the "primary physical aggressor" before making an arrest under Nevada Revised Statutes § 171.137. This argument is flawed for two reasons. First, the statute's subsections that discuss "primary physical aggressor" apply only when the police have probable cause to believe the domestic violence was a "mutual battery." Nev. Rev. Stat. § 171.137(2). Kelley does not allege that the police had probable cause to suspect a mutual battery. Second, § 171.137(1) requires an arrest when a police officer has probable cause to arrest for domestic battery, absent mitigating circumstances. "By its plain language . . . Section 171.137 . . . merely removes the *requirement* that officers make such an arrest if mitigating circumstances are present." *Bolz v. City of N. Las Vegas*, No. 2:12-CV-00288-RFB-PAL, 2015 WL 4641060, at *7 (D. Nev. Aug. 4, 2015) (emphasis in original). But nothing in § 171.137 requires officers to investigate domestic batteries beyond an initial finding of probable cause before making an arrest.

1    I deny in part the defendants' motion to dismiss Kelley's state malicious prosecution claim because, as discussed above, Kelley has adequately alleged the detectives lacked probable cause to arrest her. However, I grant the defendants' motion to the extent the amended complaint is based on the detectives discovering exculpatory evidence post-arrest for the same reasons discussed above.

### D. State False Imprisonment (Count Six)

Kelley alleges a state false imprisonment claim because the defendants incarcerated her for several months without probable cause. The defendants move to dismiss, arguing the detectives had probable cause to arrest Kelley.

"To establish false imprisonment of which false arrest is an integral part, it is . . . necessary to prove that [the plaintiff] was restrained of [her] liberty under the probable imminence of force without any legal cause or justification." *Garton v. City of Reno*, 720 P.2d 1227, 1228 (Nev. 1986) (quotation omitted, final alteration not in original). An arrest may be justified under Nevada Revised Statutes § 171.124, which provides that an officer may "without a warrant, arrest any person whom the officer has reasonable cause for believing to have committed a felony or gross misdemeanor, and is justified in making the arrest, though it afterward appears that a felony or gross misdemeanor has not been committed." *See Marschall v. City of Carson*, 464 P.2d 494, 500 (Nev. 1970). The "reasonable cause" requirement in § 171.124 mirrors the probable cause requirement in the Fourth Amendment. *Washington v. State*, 576 P.2d 1126, 1128 (Nev. 1978).

Kelley has stated a claim for false imprisonment because she has adequately alleged the detectives lacked probable cause at the time of arrest. I therefore deny in part the defendants' motion to dismiss Kelley's state false imprisonment claim. However, she has not alleged facts about when detectives discovered exculpatory evidence that would have rendered continued detention unjustified. I therefore grant the defendants' motion to the extent Kelley's claim is based on a failure to release her after discovering exculpatory information, such as the videos or Young's psychiatric history.

### E. State IIED (Count Four)

Kelley alleges she suffered humiliation, anxiety, embarrassment, and severe emotional distress due to her false arrest and incarceration. She further alleges the defendants intentionally and recklessly inflicted the distress. The defendants move to dismiss this claim because Kelley has not alleged sufficient facts in support.

The elements of IIED are: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress," and (3) causation. *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (en banc). Outrageous conduct is behavior that goes "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted). The Supreme Court of Nevada has referred to the Restatement (Second) of Torts § 46 as relevant authority for IIED claims under Nevada law. *See, e.g.*, *Olivero v. Lowe*, 995 P.2d 1023, 1027 (Nev. 2000); *Selsnick v. Horton*, 620 P.2d 1256, 1257 (Nev. 1980). The comments to the Restatement offer examples of when a police officer's conduct may be so outrageous as to support an IIED claim. Some examples include where the officer attempts to extort money by a threat of arrest, attempts to extort a confession by falsely telling the accused her child has been injured in an accident and she cannot go to the hospital until she confesses, or otherwise engages in an "extreme abuse" of his position. "The Court determines whether the defendant's conduct may be regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may differ, the jury determines whether the conduct was extreme and outrageous enough to result in liability." *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009).
Emotional distress "must be so severe and of such intensity that no reasonable person could be expected to endure it." *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993). Allegations that the plaintiff received medical treatment or suffered physical manifestations of emotional distress will suffice to allege extreme emotional distress. *Shoen v. Amerco, Inc.*, 896 P.2d 469, 477 (Nev. 1995) (finding a plaintiff had sufficiently alleged severe emotional distress

when he "alleged that he [had] been diagnosed as 'situationally depressed,' and [was] receiving psychiatric treatment and taking medication"). But absent other indicia of emotional distress, allegations of "[i]nsomnia and general physical or emotional discomfort are insufficient." *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 483 (Nev. 1993); *see also Alam*, 819 F. Supp. at 911 (holding feelings of inferiority, headaches, irritability, and weight loss are insufficient to amount to severe emotional distress).

Courts evaluate IIED claims "on a continuum: the less extreme the outrage, the greater the need for evidence of physical injury or illness from the emotional distress." *Mazzeo v. Gibbons*, 649 F. Supp. 2d 1182, 1201 (D. Nev. 2009) (quotation omitted). As with the question of whether conduct is extreme and outrageous, the court determines "whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." Restatement (Second) of Torts § 46 (1965).

Kelley has alleged the detectives erroneously arrested her without probable cause. Without more, she has not alleged an extreme abuse of police power. *See Kahn v. Morse & Mowbray*, 117 P.3d 227, 237 (Nev. 2005) (allegations of attorney negligence insufficient to show extreme and outrageous conduct). Further, she has not alleged when the detectives discovered the exculpatory evidence that would have made her continued detention unreasonable. Thus, she has not alleged that despite being aware of this evidence, the officers engaged in outrageous conduct by, for example, concealing or destroying it.

Additionally, Kelley's allegations of humiliation, anxiety, embarrassment, and severe emotional distress do not suffice to allege she experienced severe emotional distress. She has not alleged she sought treatment or suffered physical manifestations of her emotional distress. Moreover, because the officers' conduct (even if it could be found to be outrageous) would be on the low end of the spectrum, Kelley's lack of factual allegations that she suffered physical injury or illness from the distress is fatal to her claim. I therefore grant the defendants' motion to dismiss Kelley's IIED claim.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that the defendants' motion to dismiss **(ECF No. 52) is GRANTED in part and DENIED in part**. Kelley's *Monell* and intentional infliction of emotional distress claims are dismissed, as are those portions of her false imprisonment and malicious prosecution claims that are based on allegations of exculpatory evidence (in the form of a video and Young's psychiatric condition) that allegedly rendered her arrest and continued detention unreasonable. But her malicious prosecution and false imprisonment claims may go forward to the extent Kelley alleges she was arrested without probable cause because she adequately alleges the officers relied solely on Young's statements in deciding whether to arrest her.

DATED this 27th day of June, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE